IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARIA RUTLEDGE, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. 3:23-cv-490-SMD ) |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | ) ) ) |
|     Defendant. | ) ) |

**OPINION & ORDER**

Plaintiff Maria Rutledge ("Rutledge") applied for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on April 13, 2021, alleging disability beginning June 13, 2019. Tr. 352, 364. Rutledge's application was denied at the initial administrative level. Tr. 181-190. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on December 21, 2022, that Rutledge was not disabled. Tr. 162-75. Rutledge appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-6. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Rutledge appeals under 42 U.S.C. § 405(g). For the reasons that follow, the Court AFFIRMS the

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

Commissioner's decision.[2]

## I.        STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

>   (1) Is the person presently unemployed?
>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a), 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 10); Def.'s Consent (Doc. 11).

[3] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.     STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Rutledge was 45 years old on her alleged disability onset date. Tr. 352. She graduated high school and has past relevant work experience as a home health attendant and a cash register servicer. Tr. 357. Rutledge alleged disability due to lower lumbar spinal disease in back, arthritis, hip problems, chronic pain, knee pain, obesity, right shoulder pain, sciatica, osteoarthritis in both knees, high blood pressure, and allergies. Tr. 356.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Rutledge's disability determination. At step one, the ALJ found Rutledge has not engaged in substantial gainful activity since her alleged onset date. Tr. 164. At step two, the ALJ found Rutledge suffers from the following severe impairments: osteoarthritis, degenerative joint disease, sciatica, spondylosis, and depressive disorder. Tr. 165. At step three, the ALJ found Rutledge does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 166.

The ALJ proceeded to determine Rutledge's RFC, finding she has the capacity to perform light work, except she must avoid climbing ladders, ropes, and scaffolds and unprotected heights; can occasionally crawl, stoop, and balance; can frequently kneel and crouch; can frequently finger and handle; should avoid extreme heat and extreme cold; should avoid environments with loud noises and sounds; needs a five-minute break every two to three hours to change positions; can perform simple tasks; and can occasionally interact with the public, and frequently interact with coworkers and her first line supervisor. Tr. 168. At step four, the ALJ found Rutledge is unable to perform any past relevant work. Tr. 174. At step five, the ALJ found that, considering Rutledge's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Rutledge can perform. Tr. 174. Accordingly, the ALJ found that Rutledge was not disabled from her alleged onset date through the decision date. Tr. 175.

## IV.   RUTLEDGE'S ARGUMENTS

Rutledge presents three issues for the Court's review:

(1) Whether the ALJ erred by failing to consider the opinion of Dr. Adam Dooley pursuant to 20 C.F.R. § 404.1520c.

(2) Whether the ALJ improperly applied the pain standard.

(3) Whether the ALJ's RFC finding is unsupported by substantial evidence.

Pl.'s Br. (Doc. 12) at 1. As explained below, the Court finds that the ALJ did not err as to these issues.

V.   ANALYSIS

    **1. The ALJ did not err by failing to consider Dr. Dooley's opinion.**

Rutledge argues that the ALJ failed to consider the medical opinion of Dr. Dooley, who imposed work restrictions on Rutledge after her right knee replacement surgery. Pl.'s Br. (Doc. 12) pp. 4-5. Had Dr. Dooley's opinion been accepted and his limitations imposed in the RFC, Rutledge contends that she would be unable to perform the jobs listed by the ALJ. *Id*. at 5.

To determine a claimant's RFC, an ALJ must evaluate the persuasiveness of all medical opinions and then articulate his findings as to the supportability and consistency of those medical opinions. 20 C.F.R. § 404.1545(a)(3), § 404.1520c(a)-(c). Under the revised medical evidence regulations, a medical opinion "is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions" in certain areas. 20 C.F.R. § 404.1513(a)(2). Relevant here, courts consistently find that an ALJ's failure to address temporary work restrictions imposed by a physician is harmless error because of the temporary nature of the work restriction. *See, e.g.*, *Kirkpatrick v. Berryhill*, 2018 WL 6070343, at *9 (M.D. Ala. Nov. 20, 2018) (finding that the ALJ's failure to address the weight given to a doctor's opinion was harmless because, in part, the restriction was a temporary post-operative recommendation); *Oliveira v. Comm'r of Soc. Sec.*, 2022 WL 4305933, at *6 (M.D. Fla. Sept. 19, 2022) (finding that the ALJ's failure to evaluate the claimant's post-surgery work restrictions, which were specifically designated as temporary and not included in future treatment notes, was harmless error); *Whitted v. Berryhill*, 2018

WL 5291861, at *7 (E.D.N.C. May 17, 2018) (finding that any error committed by the ALJ in failing to address a medical opinion was harmless where the opinion was temporary in nature and instructed for the purpose of the claimant's recovery from surgery).

Here, Rutledge reported to Dr. Dooley three months after undergoing a right knee replacement. Tr. 598. During that initial follow-up visit, Dr. Dooley assessed Rutledge's progress and noted that prolonged activity—including standing and walking—exacerbated her swelling and caused her discomfort. Tr. 598. Dr. Dooley thus imposed a work restriction stating: "no prolonged standing, walking more than 2 hours in an 8 hour work day." Tr. 598. He noted that he would "see [Rutledge] back in 6 weeks for re-check and re-evaluation." Tr. 598. During two subsequent follow-up visits, Dr. Dooley did not remove, restate, or otherwise alter the work restrictions imposed during the first visit. Tr. 596, 597.

For at least three reasons, it is clear that Dr. Dooley's work restrictions were temporary in nature and were not an opinion as to Rutledge's long-term functional capacity. First, context indicates that Dr. Dooley's restrictions were temporary because they were imposed following a specific medical procedure that, by its nature, lends itself to such restrictions. *See Carroll v. Colvin*, 2015 WL 5737625, at *12 (E.D.N.C. Sept. 30, 2015) (finding context suggested that a restriction was temporary where it was imposed after a specific medical procedure with instructions to follow up). Indeed, Rutledge had a right knee replacement; thus, short-term restrictions on her ability to stand and walk— imposed during her first follow-up examination—would be expected. However, as Rutledge recovered from the procedure, long-term restrictions on her ability to stand and

7

walk would *not* be expected. Thus, the context of the work restrictions imposed by Dr. Dooley indicates that the restrictions were merely temporary and not Dr. Dooley's opinion as to Rutledge's long-term functional capacity.

Second, the absence of subsequent restrictions imposed by Dr. Dooley in follow-up visits indicates that his initial restrictions were temporary. While a physician need not repeatedly instruct a claimant as to her limitations, the context in which Dr. Dooley imposed the work restrictions here—i.e., during Rutledge's first follow-up visit from knee replacement—accompanied by the absence of further instructions affirming or modifying the restrictions in subsequent visits suggests that the work restrictions were temporary. *See Troy v. Colvin*, 266 F. Supp. 3d 288, 294 (D.D.C. 2017) (holding that restrictions contained in post-surgery instructions were temporary where subsequent records failed to indicate that the restrictions were intended to carry forward permanently). This conclusion is supported by the fact that Dr. Dooley's subsequent treatment notes indicate that Rutledge's knee replacement was "healed" and that she was "doing well on the right knee." Tr. 597. Thus, even though Dr. Dooley did not explicitly lift the work restrictions during Rutledge's subsequent visits, the fact that the restrictions were not reiterated or modified in follow-up visits supports the conclusion that the restrictions were temporary and not an opinion as to Rutledge's long-term functional capacity.

Finally, the absence of other evidence in the record suggesting the need for standing and walking restrictions suggests that Dr. Dooley's post-surgery restrictions were merely temporary. Rutledge does not point the Court to any objective evidence showing that she should be limited in standing or walking, nor does she cite the opinion of another physician

8

imposing such limitations after her knee replacement. Thus, because there is a lack of additional evidence in the record restricting Rutledge's ability to stand or walk, Dr. Dooley's post-surgery work restriction appears temporary and not a reflection of her long-term functional capacity. *See Johnson v. Berryhill*, 2018 WL 671244, at *5 (M.D.N.C. Feb. 1, 2018) (concluding that a physician's restriction was temporary because subsequent evidence showed that the claimant had improved over time after heart surgery).

Because Dr. Dooley's work restrictions reflect merely temporary, post-surgery restrictions that were not intended to reflect Rutledge's long-term functional capacity, the ALJ's failure to address the consistency and persuasiveness of the restrictions—and/or his failure to impose restrictions in Rutledge's RFC based on the work restrictions—constitutes harmless error at most. *See Cymek v. Comm'r of Soc. Sec.*, No. 5:20-cv-122-PRL (Doc. 20) (M.D. Fla. Aug. 27, 2021) (finding that "the record implicitly indicated" that a claimant's restrictions that "were reflected in post-surgery follow-up notes by physician's assistants, but were not included in later treatment notes" were lifted, so "any error by the ALJ in failing to properly evaluate the temporary work restrictions was harmless"); *Saffioti v. Comm'r of Soc. Sec.*, 2019 WL 298473, at *4 (M.D. Fla. Jan. 7, 2019) (holding that the ALJ's failure to discuss limitations regarding use of a back brace and cane constituted harmless error because the relevant treatment notes indicated the restrictions were temporary and would not have affected the ultimate findings); *Whitted v. Berryhill*, 2018 WL 5291861, at *7 (E.D.N.C. May 17, 2018) (finding the ALJ's failure to discuss and assign weight to post-surgery instructions was harmless error because the restrictions were temporary in nature and for the purpose of the claimant's recovery from

surgery). As such, the Court finds that the ALJ did not err in failing to address Dr. Dooley's post-surgery work restrictions.

### 2. The ALJ properly applied the pain standard.

A Social Security claimant may prove disability through subjective testimony about her symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability through subjective complaints, a claimant must provide: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence meeting this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including objective medical evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. § 404.1529(c)(1)-(4). If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

At the hearing before the ALJ, Rutledge testified that she had difficulty walking, lifting, and concentrating due to pain. Tr. 168. She acknowledged that she can work part-time but requires a four-hour nap in the afternoon. Tr. 106. Rutledge further claimed that she has pressure in her lumbar spine, swelling in her knees, and that she requires a cane to walk. Tr. 105.

The ALJ considered Rutledge's testimony and found that her "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." Tr. 170. However, the ALJ concluded that Rutledge's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 170. Accordingly, the ALJ found that Rutledge's subjective complaints did not establish disability.

Rutledge argues that the ALJ erred in this finding because (1) she presented objective medical evidence confirming the severity of her alleged symptoms; and (2) the ALJ failed to state a reasonable basis for discrediting her symptom allegations. Pl.'s Br. (Doc. 12) pp. 6-14. Neither argument is persuasive.

### A. Substantial evidence supports the conclusion that Rutledge's objective evidence did not confirm the severity of her symptom testimony.

Rutledge contends that she provided objective medical evidence confirming the severity of her symptom testimony. Pl.'s Br. (Doc. 12) p. 6. Specifically, she points to evidence showing that she has a back condition in need of surgery, a knee condition in need of surgery, a shoulder condition in need of surgery, and moderate carpal tunnel syndrome in her dominant hand. *Id*. at 7. However, the mere existence of these impairments do not confirm the severity of Rutledge's alleged symptoms or their effect on her ability to work. *See Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work"); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("Diagnosis of

11

a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (per curiam) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). As such, substantial evidence supports the conclusion that Rutledge did not establish disability through objective medical evidence.

### B. Substantial evidence supports the ALJ's decision to discredit Rutledge's symptom testimony.

Rutledge also argues that the ALJ's decision to discredit her symptom testimony is not supported by substantial evidence. Pl.'s Br. (Doc. 12) pp. 7-14. Her argument is two-fold. First, Rutledge contends that because she has a torn rotator cuff, the ALJ erred by not including a reaching limitation in her RFC. *Id*. at 8-12. Second, she contends that the ALJ failed to properly consider the side effects of her medication, which causes her to be sleepy and thus warrants an accommodation for rest in her RFC. *Id*. at 12-14. The Court addresses each argument in turn.

### i. Substantial evidence supports the ALJ's decision to impose an RFC without a reaching limitation.

Rutledge argues that because she has a torn rotator cuff, the ALJ erred by not including a reaching limitation in her RFC. *Id.* at 8-12. She asserts that this omission contradicts her testimony, her medical records, and the ALJ's own conclusion that imaging of her arm supports further restrictions. *Id*.

"Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1053 (S.D. Ala. 2016). In determining whether substantial evidence supports an ALJ's RFC determination, "[c]ourts are precluded, however, from 'deciding the facts anew or re-weighing the evidence.'" *Id.* at 1054 (quoting *Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. 2010) (per curiam)). Further, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

Here, substantial evidence supports the ALJ's decision to impose an RFC without a reaching limitation. When addressing Rutledge's right shoulder, the ALJ stated: "Although [Rutledge] reported difficulty and pain with overhead reaching, the record shows that [she] was generally noted to have 5/5 strength and was routinely observed with no motor deficits." Tr. 173. In support of this conclusion, the ALJ pointed to (1) a November 2020 medical record from a primary care physician, which noted that Rutledge had right shoulder pain with range of motion, Tr. 722; (2) three medical visits to a primary care physician occurring in March 2021, December 2021, and January 2022, which all reflected normal musculoskeletal motion with no pain in her extremities, Tr. 1032, 1070, and 1079; (3) a medical visit in March 2022 showing normal range of motion in Rutledge's extremities, Tr. 1132; and (4) a medical visit in November 2022 showing Rutledge had 5/5 strength during a musculoskeletal exam, Tr. 1280, 1284. In addition to this evidence, the ALJ also noted throughout his opinion that Rutledge had intact strength in her right

shoulder, Tr. 171; had declined an epidural or block injection after a right shoulder flare, Tr. 171; and had otherwise exhibited normal range of motion in her extremities with no motor or sensory deficit, Tr. 171. Simply put, this is substantial evidence supporting the ALJ's decision to impose an RFC without a reaching limitation.

Of course, Rutledge urges the Court to adopt the evidence in the record supporting imposition of a reaching restriction. However, the Court cannot reweigh the evidence before the ALJ or substitute its own judgment for the Commissioner in determining whether substantial evidence supports an ALJ's RFC determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent [the claimant] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision."). Here, it is clear from the ALJ's opinion that he considered evidence supporting the need for a reaching limitation,[6] yet ultimately found that such a limitation was unnecessary based on other evidence in the record. Because there is substantial evidence supporting the ALJ's decision to not impose a reaching limitation in the RFC, the Court will not reweigh the evidence in order to reach a contrary conclusion. As such, the ALJ did not err.

---

[6] *See* Tr. 173 (noting that the consultants opined that Rutledge could not frequently reach overhead with the right upper extremity); Tr. 169 (noting right shoulder imaging showing a focal high-grade tear and mild osteoarthrosis); Tr. 169 (noting that Rutledge received an injection in her shoulder and underwent physical therapy); etc.

### ii. The ALJ properly considered the side effects of Rutledge's medication.

Rutledge, who works part-time as a home health aide, testified that she works "early in the morning" then naps "about four hours" in the afternoon and has to rest on her days off. Tr. 106. Rutledge appears to link her need for naps and rest to her use of medication. Tr. 170 (noting that in November 2022, Rutledge stated that "she would like to switch [from hydrocodone] to Tramadol because hydrocodone causes her to be sleepy during the day").

The ALJ considered Rutledge's testimony but found that additional RFC limitations were not required based on the side effects of her medication. *Id.* at 172. The ALJ reasoned that "[a]lthough [Rutledge] reported having to [take] naps, her medical providers have not recommended such a restriction[.]" *Id.* at 172. Additionally, the ALJ stated that although "the record does describe possible medication side effects, [Rutledge] was able to work part-time consistently, manage working with different clients, and drive to her client's houses." *Id.* at 172.

Rutledge argues that the ALJ did not "adequately address or discredit [her] allegations of side effects from medication that would limit her ability to work." Pl.'s Br. (Doc. 12) p. 12. Specifically, Rutledge contends that the ALJ erred in discrediting her testimony regarding her need to rest by improperly relying on her physician's silence as to such a limitation and on her statement that she is able to work part-time. *Id.* at 13-14.

"When evaluating the intensity and persistence of a claimant's alleged symptoms, the Social Security regulations direct the ALJ to consider the claimant's alleged medication

15

side effects." *Coney v. Comm'r of Soc. Sec.*, 2016 WL 1090094, at *3 (M.D. Fla. Mar. 21, 2016) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability.'" *McDevitt v. Comm'r of Soc. Sec.*, 241 F. App'x 615, 619 (11th Cir. 2007) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981)); *Foster v. Kijakazi*, 2022 WL 11382974, at *8 (M.D. Fla. Mar. 2, 2022). The claimant bears the "burden of introducing evidence supporting a claim that [her] symptoms, including any medication side effects, render . . . her disabled." *Coney*, 2016 WL 1090094, at *4 (quoting *Principe v. Comm'r of Soc. Sec.*, 2015 WL 1345311, at *5 (M.D. Fla. Mar. 23, 2015)).

Here, substantial evidence supports the ALJ's decision to not limit Rutledge's ability to work based on the side effects of her medication. Rutledge offers only self-reported evidence that she experiences fatigue from her medication, which she contends limits her ability to work. However, this evidence does not meet Rutledge's burden to show that additional restrictions in her RFC were necessary or that her medication rendered her disabled. *See Coney*, 2016 WL 1090094, at *4 (holding that the claimant's testimony that he napped four to five hours per day between 8:00 a.m. and 5:00 p.m. coupled with a check-the-box physician form indicating that his "medication side effects would constantly interfere with [his] attention and concentration" was insufficient to meet the burden of establishing that drowsiness caused by medication was disabling); *see also Van Sant v. Kijakazi*, 2023 WL 2728223, at *8 (M.D. Fla. Mar. 31, 2023) ("Given [the ALJ's attestation that he considered the entire record as required under 20 C.F.R. § 404.1529 and SSR 16-3p], the paucity of evidence buttressing the Plaintiff's claim of disabling

medication side effects, and the entirety of the ALJ's decision, the Court is satisfied that the ALJ took into account the full ambit of the Plaintiff's medical condition in assessing her reported symptoms, including any medication side effects."). As such, the Court finds that the ALJ did not err when considering the side effects of Rutledge's medication and its effect on her ability to work.

### 3. The RFC finding is based on substantial evidence.

Rutledge argues that the ALJ's RFC determination is not based on substantial evidence because the ALJ erred (1) in addressing the work restrictions imposed by Dr. Dooley and (2) by improperly discrediting her symptom testimony. Pl.'s Br. (Doc. 12) pp. 14-15. However, for the reasons discussed above, the ALJ did not err as to either, and Rutledge raises no additional argument as to why the RFC is unsupported by substantial evidence. As such, the ALJ's RFC determination will not be disturbed.

## VI. CONCLUSION

As explained above, the Court finds that the ALJ did not commit reversible error and that substantial evidence supports the Commissioner's decision. Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 17th day of September, 2024.

*/s/ Stephen M. Doyle*
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE